IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>COE DOWNING,<br><br>        Defendant. | Case No. 19-20002-01-JAR |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Coe Downing's *pro se* Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 47). For the reasons provided below, Downing's motion is dismissed without prejudice for lack of jurisdiction.

## I.  Background

On January 28, 2020, Downing appeared before Judge Carlos Murguia and pleaded guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341.[1] On June 23, 2020, this Court sentenced Downing to 37 months' imprisonment, the bottom of the U.S. Sentencing Guidelines range, followed by two years of supervised release.[2] Downing is 49 years old, and his projected release date is April 2, 2022.

Downing is incarcerated at FCI Ashland in Kentucky. The Bureau of Prisons ("BOP") reports that 335 inmates have tested positive for COVID-19 out of 619 tested at this facility.[3] The BOP further reports that FCI Ashland has no active inmate case, four active staff cases, and

---

[1] Doc. 35. This case was reassigned to Chief Judge Julie A. Robinson on February 20, 2020. Doc. 37.

[2] Doc. 44.

[3] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Mar. 29, 2021).

six inmate deaths attributed to COVID-19.[4]  Vaccinations at FCI Ashland are underway, with 120 staff and 100 inmates fully vaccinated as of March 18, 2021.[5]

On February 22, 2020, Downing filed a motion requesting compassionate release due to his underlying medical conditions of morbid obesity and hypertension.  He also states that he has been a smoker for thirty years.  He requests that his time be reduced to time served.

Downing is not represented by counsel.  Under District of Kansas Standing Order 19-1, the Federal Public Defender ("FPD") was appointed to represent indigent defendants who may qualify to seek compassionate release under section 603(b) of the First Step Act of 2018.[6]  That Order was supplemented by Administrative Order 20-8, which established procedures to address motions brought on grounds related to the COVID-19 pandemic.  Under Administrative Order 20-8, the FPD shall notify the court within fifteen days of any *pro se* individual filing a compassionate release motion whether it intends to enter an appearance on behalf of the defendant, or whether it seeks additional time to make such determination.  The FPD has informed the Court that it does not intend to enter an appearance on Downing's behalf.  Accordingly, Downing proceeds *pro se*.

## II.    Legal Standard

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[7]  Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[8] a court may

---

[4] *Id.*

[5] *Id.*

[6] Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

[7] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).

[8] Pub. L. No. 115-391, 132 Stat. 5194.

modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction, that a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and that the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction.[9] The Sentencing Commission has recognized four categories of "extraordinary and compelling reasons": the defendant's medical condition, the defendant's age, the defendant's family circumstances, and a catch-all, "other reasons."[10]

"Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the defendant's] request."[11] "[Tenth Circuit] cases thus require the movant to show that § 3582(c) authorizes relief for the court to have jurisdiction."[12] In other words, if the defendant cannot show that § 3582(c) authorizes relief, the Court must dismiss the motion for lack of jurisdiction.[13]

---

[9] 18 U.S.C. § 3582(c)(1)(A); *see United States v. Haynes*, 827 F. App'x 892, 895 (10th Cir. 2020).

[10] U.S.S.G. § 1B1.13 cmt. n.1; *see United States v. Gieswein*, 832 F. App'x 576, 577 (10th Cir. 2021).

[11] *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting *United States v. Brown*, 556 F.3d 1108, 1113 (10th Cir. 2009)) (vacating the district court's order denying a § 3582(c)(1)(A) motion and remanding with instructions to dismiss the motion for lack of jurisdiction). *But see United States v. Read-Forbes*, ___ F. App'x ___, No. 20-3104, 2021 WL 423160, at *2 n.1 (10th Cir. Feb. 8, 2021) (questioning, but not deciding, "whether [the defendant]'s failure to satisfy the substantive requirements of § 3582(c)(1)(A) is jurisdictional").

[12] *United States v. Poutre*, 834 F. App'x 473, 474 (10th Cir. 2021).

[13] *Saldana*, 807 F. App'x at 820; *Poutre*, 834 F. App'x at 474. *But see Read-Forbes*, 2021 WL 423160, at *2 n.1.

### III. Discussion

#### A. Exhaustion

Downing has satisfied the exhaustion requirement described in § 3582(c)(1)(A). He submitted a request for compassionate release to the warden of FCI Ashland on December 27, 2020, which the warden denied on January 15, 2021.[14] The Court thus proceeds to consider the merits of Downing's motion.

#### B. Extraordinary and Compelling Reasons

Having determined that Downing has properly satisfied the exhaustion requirement, the Court must next determine whether extraordinary and compelling reasons warrant reducing his sentence to time served.

Downing asserts that his underlying medical conditions constitute an extraordinary and compelling reason warranting a sentence reduction because they place him at an increased risk of severe illness should he contract COVID-19. Downing is obese. Although he claims that he weighs 245 pounds, his medical records evidence that weighs 226 pounds, which places his body mass index ("BMI") at 32.4.[15] According to the Centers for Disease Control and Prevention ("CDC"), having a BMI of 25 or higher "can make you more likely to get severely ill from COVID-19. The risk of severe COVID-19 illness increases sharply with elevated BMI."[16]

Downing also has hypertension. Downing's medical records show that although his hypertension is treated, he is not always compliant in taking his prescribed medication.[17]

---

[14] Doc. 47-5.

[15] The Presentence Investigation Report reflects that Downing "is five feet, ten inches tall and weighs approximately 235 pounds," which calculates to a BMI of 33.7. Doc. 40 ¶ 54.

[16] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021).

[17] Doc. 51 at 18.

Moreover, Downing has been a smoker for thirty years. The government concedes that per Department of Justice policy and CDC guidance, Downing's medical conditions in the context of the COVID-19 pandemic constitute an extraordinary and compelling reason for a sentence reduction. The government contends, however, that when balanced with the sentencing factors under 18 U.S.C. § 3553(a), Downing fails to demonstrate a situation so severe that release is warranted. The Court agrees.

    C.    **Section 3553(a) Factors**

Even if a defendant demonstrates that extraordinary and compelling circumstances exist, the Court may not grant a motion for compassionate release unless the sentencing factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction. Under § 3353(a), a court must "impose a sentence sufficient, but not greater than necessary" in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence[s] and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.[18]

---

[18] 18 U.S.C. § 3553(a).

In this case, Downing pleaded guilty to one count of mail fraud. This case arose from a five-year scheme in which Downing defrauded his former employer, Wachter Inc., a company that provides electrical and data infrastructure, of $685,323.22. Between 2012 and 2016, Downing would place orders for extra electrical and wire cable from a supplier that Wachter paid for, and then sell that extra cable to another company, pocketing the sales proceeds.

In January 2019, a grand jury sitting in the District of Kansas returned a fourteen-count indictment against Downing, charging him with seven counts of wire fraud and seven counts of mail fraud. Downing was subsequently arrested in North Carolina, where he resided. At his arraignment in North Carolina, Downing was released on bond and ordered to appear in the District of Kansas. Downing appeared in the District of Kansas for his arraignment and initial appearance in February 2019.

In May 2019, Downing was summoned to a hearing on a motion to revoke his bond. The petition filed by the U.S. Pretrial Services Office alleged that Downing had traveled to Canada without permission using his passport, which he previously advised the Court that he had lost. At the revocation hearing on June 3, 2019, Chief Magistrate Judge James P. O'Hara found that Downing had violated his conditions of release but ordered him again released on bond. But on August 19, 2019, Judge O'Hara ordered Downing detained, when a hearing on a second motion for revocation revealed that Downing had lied under oath to the court at the June 3, 2019 hearing. At the June 3, 2019 hearing, Downing had testified that on May 20, 2019, he found his lost passport in the storage shed at Fedora Security after his fellow employees suggested he retrace his steps to find his passport. But video surveillance footage showed Downing had not been on the premises that day, and the employees all stated that they were not even aware that Downing had lost his passport.

Downing has one prior conviction for driving under the influence, as well as three speeding violations.  At the time of the instant offense, Downing was under supervision for the driving under the influence conviction.

In 2017, Downing went to work for Fedora Security as head of engineering, where he remained until he was detained on these charges in 2019.[19]  While detained at CoreCivic in Leavenworth, Kansas, for eleven months, Downing participated in the detainee work program.[20] While in prison, Downing states that he has worked as an orderly, cleaning a bathroom shared by sixty men.  He also states that he has tutored inmates seeking GEDs.

While the Court takes all seven § 3553(a) factors into account, those most pertinent to Downing's case are the nature of the offense, his history and characteristics, and the need for the sentence to provide deterrence and respect for the law.  First, Downing committed a fraud over several years that harmed his former employer, Wachter, and its employees.  The government has submitted a letter from the Chief Financial Officer ("CFO") of Wachter, which opposes Downing's request for compassionate release.[21]  Notably, the CFO states, "While we feel for Mr. Downing and his family, we also feel he should have considered all the ramifications of his actions on all the families he impacted by stealing from the company for several years."[22] Downing defrauded the company of $685,323.22, a serious and consequential crime.

The Court also considers Downing's history and characteristics.  While he has few prior convictions, other than a driving under the influence conviction and speeding violations, Downing demonstrated that being charged with this fraud did not prompt in him any immediate

---

[19] Doc. 40 ¶ 61.

[20] Doc. 47-2.

[21] *See* Doc. 51-1.

[22] *Id.*

positive change of behavior. He violated his bond by going to Canada, after having lied to the court that his passport was lost. Then, to cover the fact that he lied, he concocted another lie—that he found the passport in his new employer's storage shed, after his fellow employees suggested he retrace his footsteps. But his fellow employees did not tell him that; they were not even aware that he had lost his passport. In effect, Downing committed a fraud on the court, and as a consequence the court revoked his bond. This chain of events speaks volumes about Downing's character and his repeated fraudulent behavior. It also demonstrates that Downing had little respect for the law even after he was charged in this case.

Moreover, although Downing's hypertension is a risk factor justifying a finding of an extraordinary and compelling reason for a sentence reduction, his statements about his medical condition also place his credibility in question. Downing claims he weighs 245 pounds; recent medical records reveal he weighs 19 pounds less than that, such that his BMI is not as high as he implies. Further, he relies on his hypertension as an extraordinary and compelling medical reason for release. But medical records show that he is not compliant in taking the prescribed medication for it.

Given the nature of Downing's offense, his fraudulent statements to the court while on pretrial release, his overstating his weight and his noncompliance with medical treatment, the Court concludes that a sentence of time served would diminish the nature and seriousness of his offense. The Court further concludes that a sentence of time served would not be sufficient to provide adequate deterrence or respect for the law.

The Tenth Circuit requires the movant to show that § 3582(c) authorizes relief for the Court to have jurisdiction. Downing has failed to make that showing here. Accordingly, the Court must dismiss the motion for lack of jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant Coe Downing's Motion to Reduce Sentence – First Step Act (Doc. 47) is **dismissed for lack of jurisdiction**.

**IT IS SO ORDERED.**

Dated: March 29, 2021

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        CHIEF UNITED STATES DISTRICT JUDGE